UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

AVE CINAR, CELESTE DRAYTON, NICOLE : 
ADOLPHUS, DARLENE RIERA, and STUART :
BARON, individually and on behalf of all others :    REPORT AND
similarly situated, :    RECOMMENDATION
    :
    Plaintiffs, :    No. 20-CV-1362 (RPK) (JRC)
    :
    -against- :
    :
R&G BRENNER INCOME TAX, LLC, SUMMIT :
CONSULTANTS, INC., APEX PLANNING INC., and :
BENJAMIN K. BRENNER, :
    :
    Defendants. :
    :

----------------------------------------------------------------x

JAMES R. CHO, United States Magistrate Judge:

    Plaintiffs Ave Cinar ("Cinar"), Celeste Drayton ("Drayton"), Nicole Adolphus

("Adolphus"), Darlene Riera ("Riera"), and Stuart Baron ("Baron") (collectively, "plaintiffs") bring

this action on behalf of themselves and other similarly situated current and former employees of

defendants R&G Brenner Income Tax, LLC, Summit Consultants, Inc. ("Summit"), Apex Planning

Inc. ("Apex"), and Benjamin K. Brenner (collectively, "R&G Brenner" or "defendants"), alleging

violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York

Labor Law ("NYLL") §§ 650 *et seq.*, *id.* §§ 190 *et seq.* *See* Am. Compl., Dkt. 72.  Currently

before this Court, on referral from the Honorable Rachel P. Kovner, is plaintiffs' motion to certify a

class of all income tax preparers who worked for R&G Brenner in New York from March 13, 2014

through the present and distribute notice to putative class members.  *See* Motion to Certify Class,

Dkt. 86.  Defendants oppose the motion on the grounds that:  (1) the motion is untimely and (2)

plaintiffs have not established numerosity, commonality, predominance and superiority.   For the

reasons set forth below, this Court respectfully recommends granting plaintiffs' motion for class

certification.

I.      **Relevant Factual and Procedural Background**

Defendants own and operate a tax preparation business that maintains offices in the New York metropolitan area, doing business as R&G Brenner Income Tax Centers, also known as, R&G Brenner Income Tax Consultants.[1]  *See* Am. Compl. ¶¶ 18, 21.  R&G Brenner maintains its principal place of business at 111 East Merrick Road, Valley Stream, New York 11580, as well as approximately 20 to 30 branch locations throughout the state of New York.  *See* id. ¶¶ 20, 22; Brenner Decl. ¶ 3.  R&G Brenner employs approximately 75 income tax preparers during the tax season.[2]  *See* excerpt from Louis Arena's deposition transcript[3] at 28, Dkt. 86-9.

Plaintiffs each worked as income tax preparers for R&G Brenner at different offices. Plaintiffs, as well as all income tax preparers, were required to sign employment agreements prior to the tax season, which include their compensation and work schedule.  *See* B. Brenner Tr. at 50, 71, Dkt. 86-8.  Those agreements are based on form templates that are adjusted to allow for individualized compensation and work schedules but are otherwise standardized.  *See id.* at 51-52; Arena Tr. at 64-65, Dkt. 86-9; Dkts. 87-14 (Riera agreement), 87-15 (Baron agreement), 87-16 (Adolphus agreement), 87-17 (Cinar agreement), 87-18 (Drayton agreement).  Thus, the language of the agreements are the same, but each income tax preparers' agreement contains different commission rates, salary draws and work schedules.  *See* Brenner Decl. ¶ 10.

R&G Brenner pays its income tax preparers on a commission only basis.  *See* B. Brenner Tr. at 151, 248-49, Dkt. 86-8; Arena Tr. at 70, Dkt. 86-9; Torres Tr. at 49-51, Dkt. 86-13.  The

---

[1] The parties stipulated that Summit and Apex were plaintiffs' joint employers.  *See* Dkt. 71.  Benjamin Brenner owns and operates Summit as its 100 percent shareholder.  *See* Declaration of Benjamin K. Brenner ("Brenner Decl.") ¶ 2, Dkt. 87-13.  Carol Brenner is a 50 percent shareholder of Apex with her husband, Robert Brenner, who owns the other 50 percent.  *See* B. Brenner Tr. at 40, Dkt. 86-8; C. Brenner Tr. at 14, 60, Dkt. 86-10.  Together, Summit and Apex formed a partnership that does business as R&G Brenner.  *See* Am. Compl. ¶ 18.

[2] The annual tax season refers to the time period between January 2 until approximately late April or mid-May of each year.  *See* Plaintiffs' Memorandum of Law in Support ("Pls.' Mem.") at 1 n.1, Dkt. 86-1.  Defendants acknowledged at the 5/10/2024 motion hearing that they can readily ascertain the annual tax season for the years at issue.  Plaintiffs do not challenge defendants' "off-season" policies.

[3] References to excerpts from deposition transcripts appear as "[deponent's last name] Tr."

income tax preparers receive a weekly advance on their commissions (or draw), which is later deducted from their final gross commissions at the end of the tax season.  *See* B. Brenner Tr. at 151, 248-49, Dkt. 86-8; Arena Tr. at 70, Dkt. 86-9.  They are not paid overtime compensation, except for a few income tax preparers who are paid based on an hourly rate.  *See* Arena Tr. at 130-31, Dkt. 86-9; Torres Tr. at 50-51, 59.  At the end of the tax season, R&G Brenner creates a final reconciliation for each income tax preparer, including the gross commission earned for the tax season, all advances (draws) that were paid during the season, all deductions withheld from the employee's wages, and the net commission earned by and payable to the income tax preparer for the tax season.  *See* B. Brenner Tr. at 151, 248, Dkt. 86-8; Torres Tr. at 44; Arena Tr. at 89, Dkt. 86-9.

Plaintiffs allege that R&G Brenner maintained a policy of making unlawful deductions from tax preparer wages, including for credit card service charges, chargeback receipts, "Errors and Omission Insurance," missing deposit money, employee referrals, "early bird specials," reward money and promo money.  *See* Am. Compl. ¶¶ 280-83; B. Brenner Tr. at 171-72, 238-39, 243, 296, Dkt. 86-8; C. Brenner Tr. at 65; Torres Tr. at 37-39.  These deductions are reflected on the tax preparers' final reconciliation at the end of the tax season.  *See, e.g.*, Final Reconciliation for Cinar, Dkt. 86-21.

R&G Brenner classifies all of their income tax preparers as exempt employees pursuant to the administrative, professional and/or retail sales exemptions.  *See* B. Brenner Tr. at 101, Dkt. 86-8.  Accordingly, R&G Brenner does not pay its income tax preparers overtime compensation.  *See id.* at 245-46; Arena Tr. at 130-31, Dkt. 86-9.  All income tax preparers are required to sign in and out of their daily shifts.  *See* Arena Tr. at 91-92, Dkt. 86-9; DeSimone Tr. at 41, Dkt. 86-12.  However, they are not required to sign in and out for lunch.  *See* Arena Tr. at 91-92, Dkt. 86-9.  Plaintiffs routinely worked more than 40 hours per week.  *See, e.g.*, Cinar Tr. at 217-21, Dkt. 86-7;

Adolphus Tr. at 134-42, Dkt. 86-3; Drayton Tr. at 94-97, Dkt. 86-4; Riera Tr. at 109-14, Dkt. 86-5; Baron Tr. at 186-99, Dkt. 86-6.

Plaintiffs contend that defendants failed to compensate them and all other similarly situated employees for overtime worked, in accordance with state and federal law.  *See* Am. Compl. ¶¶ 251-70.  Plaintiffs further allege that defendants did not provide plaintiffs and all others similarly situated employees with accurate written wage statements each week and did not pay them at least monthly, as required by New York State law.  *See id*. ¶¶ 272-78, 288-95.  Finally, plaintiffs allege that defendants made unauthorized deductions from plaintiffs' wages.  *See id*. ¶¶ 280-86.  Plaintiffs allege that defendants either knew that their conduct was not in compliance with federal and state law, or demonstrated a reckless disregard for the matter, and that defendants thus willfully committed the above acts.

Plaintiff Cinar commenced this action on March 13, 2020.  *See* Dkt. 1.  On April 30, 2021, Cinar moved for conditional certification of a FLSA collective action on behalf of all income tax preparers employed by R&G Brenner.  *See* Mot. to Proceed as Collective Action and to Facilitate Not., Dkt. 26.  On September 29, 2021, the Court granted Cinar's motion in part and authorized notice to be distributed to 91 current and former employees of R&G Brenner.  *See* Memorandum and Order, Dkt. 33.  Seven putative plaintiffs filed a Consent to Join form, including plaintiffs Drayton, Baron, Adolphus and Riera.  *See* Dkts. 38, 40, 41, 42, 43, 44, 45.  On September 26, 2023, pursuant to stipulation, Cinar filed a First Amended Complaint that, *inter alia*, added former Opt-In plaintiffs Drayton, Baron, Adolphus and Riera as named plaintiffs, removed the collective action claims pursuant to the FLSA, and added claims for unlawful deductions and frequency pay violations.  *See* First Am. Compl., Dkt. 72; Stipulation and Order, Dkt. 71.

Since conditional certification, the parties have completed the depositions of each of the five named plaintiffs and various executives and managers of R&G Brenner.  *See* Pls.' Mem. at 2-

3, Dkt. 86-1; Defendants' Memorandum of Law in Opposition ("Defs.' Opp.") at 8, Dkt. 87.

## II.    Discussion

### A.    Federal and State Labor Law

Under the FLSA and the NYLL, subject to certain exceptions, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs., tit. 12 § 142-2.2. In addition, the NYLL requires an employer to "furnish each employee with a statement with every payment of wages" that lists information such as "the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. Lab. Law § 195(3). "Because FLSA and NYLL claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the NYLL claims as a class action under the district court's supplemental jurisdiction." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011); *see Ramirez-Marin v. JD Classic Builders Corp.*, No. 16-CV-5584, 2017 WL 9511078, at *5 (E.D.N.Y. June 5, 2017) (courts "adjudicating FLSA collective actions may exercise supplemental jurisdiction over parallel state law wage and hour class claims"), *report and recommendation adopted*, 2017 WL 4358759 (E.D.N.Y. Sept. 30, 2017).

"Where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Pino v. Harris Water Main & Sewer Contractors. Inc.*, No. 17-CV-5910, 2021 WL 3675148, at *3 (E.D.N.Y. Aug. 19, 2021) (internal quotation marks and citation omitted).

## B.      Class Certification

"A class may be certified only if after a rigorous analysis the district court is satisfied that the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (internal citation and quotation marks omitted). Under Rule 23(a), a plaintiff must satisfy four prerequisites – numerosity, commonality, typicality and adequacy. *See* Fed. R. Civ. P. 23(a). Accordingly, plaintiffs seeking class certification must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defense of the class; and (4) the representative parties will fairly and adequately protect the interest of the class." *Elisa W. v. City of New York*, 82 F.4th 115, 122 (2d Cir. 2023). In addition, implied in Rule 23(a) is the requirement that membership of the class be objectively ascertainable. *See In re Petrobas Sec. Litig.*, 862 F.3d 250, 260 (2d Cir. 2017). In other words, a class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).

If those prerequisites are met, "the district court must be satisfied that certification is appropriate under Rule 23(b)." *Roach*, 778 F.3d at 405. Here, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

## C.      Timeliness of Motion

Defendants first argue that the Court should deny the motion for class certification as

untimely.  *See* Defs.' Opp. at 10-14.  Defendants contend that they will suffer prejudice because of plaintiffs' delay in filing the motion.  *See id.* at 12.

Rule 23 does not provide a deadline for filing a motion for class certification.  *See* Fed. R. Civ. P. 23(c)(1).  Rather, the Second Circuit has explained that "[a] motion for class certification should be denied [as untimely] only when the late timing of the determination may cause prejudice or unduly complicate the case."  *Acticon AG v. China North East Petroleum Holdings Ltd.*, 687 F. App'x 10, 12 (2d Cir. 2017) (internal quotation marks and citation omitted).  Where, as here, defendants had notice that the plaintiffs were likely to seek certification and the filing of a motion for class certification is "not so unexpected as to prejudice the defendants," there is no basis to deny a motion for class certification on timeliness grounds.  *See id.* at 13 (vacating denial of class certification motion for untimeliness where "defendants had ample notice that the action was a putative class action because the caption and prayer for relief in Action's prior complaints indicated its intent to seek class status").

Defendants' claims of surprise are belied by the pleadings filed in this case.  *See id.; In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14-CV-7990, 2017 WL 4541434, at *4 (S.D.N.Y. Oct. 10, 2017) (rejecting defendants' claims of untimeliness because they had prior notice where the "Complaint describes its allegations as a 'Class Action' with 'Class-and Collective-Wide Factual Allegations'"); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 206 (S.D.N.Y. 2006) (rejecting untimeliness argument where "Plaintiff's procedural stance has been as a class action since the inception of this matter, evinced both by the Complaint and by conversations and correspondence with the Court").  Both the original Complaint and the Amended Complaint made clear that plaintiffs intended to seek class treatment.  *See* Dkts. 1, 72.  In addition, in September 2023, the parties entered into a stipulation permitting plaintiff Cinar to file an Amended Complaint, with an express reservation of plaintiffs' rights to move for class

certification.  *See* Dkt. 71 at ¶ 3.

Accordingly, under the circumstances, defendants were on notice that plaintiffs intended to file a motion for class certification.  In any event, three defendants were recently joined to the action, which will undoubtedly require further discovery, and no trial date has been set.  This Court cannot find that defendants have suffered sufficient prejudice based on the timing of plaintiffs' motion for class certification.  *See Acticon*, 687 F. App'x at 12-13; *Packard v. City of New York*, No. 1:15-CV-07130, 2019 WL 2493515, at *9 n.12  (S.D.N.Y. Mar. 8, 2019), *report and recommendation adopted*, 2019 WL 1714669 (S.D.N.Y. Apr. 16, 2019); *In re Doria/Memon*, 2017 WL 4541434, at *4.

### D.    Rule 23(a) Requirements

#### 1.    Numerosity

Rule 23(a)(1) requires the putative class to be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed when the putative class has forty or more members.  *See Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 n.20 (2d Cir. 2021); *Shahriar*, 659 F.3d at 252.  Here, plaintiffs have identified at least 87 putative class members, in addition to plaintiffs, who worked for R&G Brenner from March 13, 2017 through September 29, 2021.  In addition, plaintiffs reasonably predict that there are likely more class members who were employed by R&G Brenner between March 13, 2014 and March 13, 2017.  *See Huang v. Shanghai City Corp.*, No. 19-CV-7702, 2022 WL 1468450, at *15 (S.D.N.Y. May 10, 2022) (finding "that there must have been additional employees who worked during the six-year period but not during the three-year period").  In fact, according to defendants, there were 28 tax preparers who worked for R&G Brenner between March 13, 2014 and March 12, 2017, but not on or after March 13, 2017.  *See* Brenner Decl. ¶ 7.

Defendants contest numerosity arguing that the Court should not consider 84 of the 87

collective action notice recipients for numerosity purposes because they declined to opt-in to the collective action. *See* Defs.' Opp. at 15-16. However, defendants fail to offer any authority in support of their position. On the contrary, it is well established in the Second Circuit "that the number of opt-ins under the FLSA has no bearing on the numerosity requirement for the Rule 23 class." *Velez v. 111 Atlas Rest. Corp.*, No. 14-CV-6956, 2016 WL 9307471, at *20 (E.D.N.Y. Aug. 11, 2016); *see Leong v Laundry Depot, LLC*, No. 19-CV-03545, 2023 WL 6226415, at *3 (E.D.N.Y. Sept. 26, 2023) ("Defendants' attack is off base"); *Huang*, 2022 WL 1468450, at *14 (finding numerosity met where only two potential plaintiffs opted-in out of 46 employees); *Meyers v. Crouse Health Sys., Inc.*, 274 F.R.D. 404, 414 (N.D.N.Y. 2011) (certifying Rule 23 class where 12 of the 76 FLSA opt-in plaintiffs were previously dismissed for not responding to discovery). In fact, "there may be a number of reasons the employees failed to opt-in to the action that have nothing to do with a belief that the lawsuit is a bad idea or a belief they were not actually aggrieved." *Woods v. Vector Mktg. Corp.*, No. C-14-0264, 2015 WL 5188682, at *14 (N.D. Cal. Sept. 4, 2015) (internal quotation marks omitted); *see Leong*, 2023 WL 6226415, at *3; *Jankowski v. Castaldi*, No. 01-CV-0164, 2006 WL 118973, at *2 (E.D.N.Y. Jan. 13, 2006) (finding numerosity satisfied since "potential class members may have failed to join the FLSA collective action because they feared reprisal"). The Court therefore finds that plaintiffs have satisfied the numerosity requirement.

### 2.    Commonality

"Commonality" requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The class members' claims "must depend upon a common contention . . . capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "For purposes of Rule 23(a)(2), even a single common question will do." *Id.* "Commonality is usually satisfied in wage cases where the plaintiffs allege that defendants had a common policy or practice

of unlawful labor practices." *Mendez v. MCSS Rest. Corp.*, No. 16-CV-2746, 2019 WL 2504613, at *8 (E.D.N.Y. June 17, 2019) (internal quotation marks and citation omitted).

Plaintiffs contend that commonality is established because defendants engaged in a common policy and practice of violating the wage and hour laws. Defendants argue that "individualized issues predominate . . . as [plaintiffs] each had contracts with different terms, different compensation, different schedules and hours, and they each have different educational backgrounds and different exemptions available." Defs.' Opp. at 19.

Here, plaintiffs allege a common policy of failing to pay overtime compensation, failing to provide plaintiffs with accurate wage statements pursuant to the NYLL, delaying payment to plaintiffs, and withholding unlawful deductions. Defendants do not dispute that they failed to pay overtime because they deemed plaintiffs exempt under the administrative, professional or retail sales exemptions.[4] Thus, members of the class challenge the same pay practices and raise the same issues of law and fact. *See Atakhanova v. Home Family Care, Inc.*, No. 16-CV-6707, 2020 WL 4207437, at *4 (E.D.N.Y. July 22, 2020) ("A common policy of failing to pay overtime rates is sufficient to satisfy Rule 23(a)(2)'s commonality requirement."). As discussed below, even defendants' argument that they operate a "retail or service establishment" is susceptible to proof on a class-wide basis, which supports plaintiffs' contention that commonality exists.[5] *See Bayne*, 2021 WL 4822426, at *6 n.3.

Regardless, "[c]ommonality does not require that all issues be subject to individualized proof on a class-wide basis. This is especially so in wage and hour cases . . . ." *Id. Ruiz*, cited by

---

[4] Defendants do not dispute that plaintiffs' claims for failure to provide wage notices and wage statements, unlawful deductions and frequency pay violations satisfy Rule 23(a). *See* Plaintiffs' Reply Memorandum of Law ("Pls.' Reply") at 15, Dkt. 88.

[5] The Court discusses defendants' exemption defenses more fully in the context of Rule 23(b)(3)'s requirement that questions common to the class predominate over any questions affecting only individual members. "The Rule 23(a)(2) commonality requirement is similar, but much easier to satisfy, than the Rule 23(b)(3) predominance requirement." *Mendez*, 2019 WL 2504613, at *8 n.6 (internal quotation marks and citation omitted).

defendants, is inapposite.  There, the court found that because managers "exercised enormous discretion over the extent to which overtime was approved," there was no "de facto policy against the payment of overtime."  93 F. Supp. 3d at 290-91.  Here, in contrast, it is undisputed that defendants had a companywide policy of not paying overtime because they deemed plaintiffs exempt under the administrative, professional or retail sales exemptions.  *See Metcalf v. TransPerfect Translations Int'l Inc.*, No. 19-CV-10104, 2023 WL 9510777, at *12 (distinguishing *Ruiz*), *report and recommendation adopted*, 2024 WL 1208975 (S.D.N.Y. Mar. 21, 2024).

### 3.    Typicality

Pursuant to Rule 23(a)(3), plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding."  *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 441 (S.D.N.Y. 2023) (internal quotation marks and citation omitted).  The "commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."  *Robinson v. New York City Transit Auth.*, No. 19-CV-1404, 2020 WL 5814189, at *6 (S.D.N.Y. Sept. 30, 2020) (internal quotation marks omitted).

Defendants argue that plaintiffs' claims are not typical largely for the same reasons that they dispute the commonality requirement.  *See* Defs.' Opp. at 19.  However, "[t]ypicality does not require that the facts underlying each class member's claims be identical."  *Bayne*, 2021 WL 4822426, at *6.  Rather, "typicality, like commonality, has been found where plaintiff's claims arise from the same unlawful practices or legal theories."  *Zivkovic v. Laura Christy LLC*, 329

F.R.D. 61, 69 (S.D.N.Y. 2018).

Here, for the reasons discussed regarding the commonality prerequisite, the Court finds that plaintiffs' claims are typical of the class. As discussed above, plaintiffs allege that they were subjected to a common policy and practice of failing to pay overtime compensation, failing to provide plaintiffs with accurate wage statements pursuant to the NYLL, delaying payment to plaintiffs, and imposing unlawful deductions. Plaintiffs' claims are typical of the claims of the putative class because they arise from the same employment scheme and are based on the same legal theories. *See Bayne*, 2021 WL 4822426, at \*7; *LoCurto v. AT & T Mobility Servs. LLC*, No. 13-CV-4303, 2018 WL 4519201, at \*14 (S.D.N.Y. Sept. 20, 2018) ("Their claims, therefore, arise from the same course of events, and they will make similar legal arguments to prove Defendant's liability—the crux of the typicality analysis."). Therefore, the Court finds that plaintiffs have established typicality.

### 4. Adequacy

Rule 23 requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "For named class representatives to be 'adequate' under Rule 23, [t]wo factors generally inform [the inquiry]: (1) absence of conflict and (2) assurance of vigorous prosecution." *Irvin v. Harris*, 944 F.3d 63, 71 (2d Cir. 2019) (alterations in original, internal quotation marks and citation omitted). Accordingly, "[t]he named plaintiffs in a class action cannot represent a class of whom they are not a part, and can represent a class of whom they are a part only to the extent of the interests they possess in common with members of the class." *Id.* (citation and internal quotation marks omitted). "Courts rarely deny class certification on the basis of the inadequacy of class representatives, doing so 'only in flagrant cases, where the

putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case.'" *Bayne*, 2021 WL 4822426, at *7 (quoting *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 51 (S.D.N.Y. 2012)).

Defendants do not dispute that plaintiffs have established the adequacy of representation requirement. There is no indication that plaintiffs' interests are antagonistic to those of the putative class. As discussed above, plaintiffs' claims are based on the same legal theories and arise from the same common policies of R&G Brenner as those of the proposed class. Plaintiffs have demonstrated their commitment to participate in and supervise the prosecution of this action on behalf of the proposed class. For example, plaintiffs have appeared for depositions, participated in responding to discovery and Cinar appeared at the Court-annexed mediation session. *See* Pls.' Mem. at 14. Thus, plaintiffs have zealously represented the interests of the class in the litigation to date and are adequate class representatives.

### 5.    Ascertainability

Although not a required showing under Rule 23, "courts have also read an 'implicit' ascertainability requirement into Rule 23(a)." *Li v. NY Capri Nails & Spa Inc.*, No. 20-CV-6296, 2024 WL 708775, at *5 (E.D.N.Y. Jan. 17, 2024), *report and recommendation adopted*, 2024 WL 377949 (E.D.N.Y. Feb. 1, 2024); *see also In re Petrobas Sec.*, 862 F.3d at 264. "The ascertainability standard is not demanding; it is designed only to prevent certification of classes whose membership is actually indeterminable." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).

The proposed class of income tax preparers employed by R&G Brenner since March 13, 2014 is clearly ascertainable. Indeed, defendants already identified 91 potential members of the class who were sent notice of the collective action. *See Leong*, 2023 WL 6226415, at *3; *Montiel-*

*Flores v. JVK Operations Ltd.*, No. 19-CV-3005, 2023 WL 6057375, at *4 (E.D.N.Y. Sept. 18, 2023).

### E.    Rule 23(b)(3) Requirements

Pursuant to Rule 23(b)(3), the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiffs have satisfied both predominance and superiority.

#### 1.    Predominance

"The 'predominance' requirement of Rule 23(b)(3) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Amchem Prods.*, 521 U.S. at 623).  "The requirement's purpose is to ensure [] that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Id.* (internal quotation marks and citation omitted).  "This requirement is 'satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *Bayne*, 2021 WL 4822426, at *8 (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 55 (E.D.N.Y. 2019)). "Predominance does not require a plaintiff to show that there are no individual issues."  *Id.* (quoting *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009)).

Defendants argue that the claimed exemptions "require individualized examination and proof, as each Plaintiff, and potential class member had a contract/agreement with different terms, each worked different hours, each had different levels of experience, education, and professional

backgrounds[.]"  Defs.' Opp. at 21.  Plaintiffs contend that the predominant question of liability --

whether the class members were misclassified as exempt employees – is determinable by

generalized proof.  *See* Pls.' Reply at 8-15.  They argue that accepting defendants' argument

"would effectively prevent wage and hour class actions; employers need only interpose an

exemption defense to defeat any possibility of class certification, regardless of that defense's

merit."  *Id.* at 9.

    As one court in this District stated in rejecting a defendant's argument that its exemption

defense required individualized determinations:  "Where 'Plaintiffs allege that all [c]lass

[m]embers were systematically underpaid' due to the same policy and practice, and they 'have

provided testimony and time records corroborating these claims,' differences as to the number of

hours worked by or wages paid to each class member do not preclude class certification, including

under Rule 23(b)(3)."  *Bayne*, 2021 WL 4822426, at *8 (quoting *Atakhanova*, 2020 WL 4207437,

at *9).  "Indeed, the inquiry of whether employees were supposed to be paid overtime for working

more than 40 hours a week and were not is about the most perfect question for class treatment.

Some factual variation among the circumstances of the various class members is inevitable and

does not defeat the predominance requirement."  *Id*. (internal quotation marks and citation

omitted); *see Metcalf*, 2023 WL 9510777, at *11.

    Here, the Court finds that plaintiffs have satisfied their burden of demonstrating that

individualized inquiries will not predominate as to the exemptions relied on by defendants.

Plaintiffs' claims are based on pay policies that are uniform across the class.  Plaintiffs have

established that all income tax preparers were subject to a companywide policy as exempt

employees who were not paid overtime pay.  The issue whether the exemptions apply are subject to

common proof and raise common questions.

a.        **Retail or Service Establishment Exemption**

First, defendants argue that individualized questions predominate as to their claim that plaintiffs are subject to the retail or service establishment exemption.  *See* Defs.' Opp. at 22-24. Plaintiffs assert that the applicability of the exemption can be determined on a class-wide basis.

In order for the FLSA's retail or service exemption to apply, (1) the employee must be employed by a "retail or service establishment"; (2) the employee's regular rate of pay must exceed "one and one-half times the minimum hourly rate"; and (3) more than half of the employee's compensation "represents commissions on goods or services."  29 U.S.C. § 207(i).[6]

In assessing the availability of this exemption, "[t]he question of whether a particular industry can have a retail concept within the FLSA's meaning is a threshold inquiry."  *Umbrino v. L.A.R.E Partners Network, Inc.*, 585 F. Supp. 3d 335, 352 (W.D.N.Y. 2022) (internal quotation marks and citation omitted).  In determining whether an employer is subject to the exemption, courts have continued to apply the definition of "retail or sales establishment" contained in a now-repealed FLSA provision – "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry."  *Id.* at 350 (quoting *Sydney v. Time Warner Ent.-Advance/Newhouse P'ship*, No. 5:13-CV-286, 2021 WL 2662047, at *4 (N.D.N.Y. Mar. 30, 2021), *report and recommendation adopted*, 2022 WL 474146 (N.D.N.Y. Feb. 16, 2022)).  In this context, "services" means "services rendered by establishments which are traditionally regarded as local retail service establishments such as . . . restaurants, hotels, barber shops, repair shops, etc."  29 C.F.R. § 779.314.  Conversely,  "the term 'retail or service establishment' as used in the [FLSA] does not

---

[6] New York's overtime requirements also incorporate the FLSA's exemptions, including the retail or sales establishment exemption.  *See* N.Y. Comp. R. & Regs., tit. 12 § 142-2.2 ("[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 *et seq.*, the Fair Labor Standards Act of 1938, as amended").  New York's administrative exemption parallels the FLSA's exemption in that the employee must meet a duties test and also be "paid for his services a salary" at a prescribed minimum rate before the exemptions will apply. *See id.* §§ 142–2.14(c)(4)(i)(e) and (ii)(d).

encompass establishments in industries lacking a 'retail concept.'" *Id.* § 779.316.  The applicable regulations further explain that a retail or service establishment "sells goods or services to the general public." *Id.* § 779.318(a).

Accordingly, courts have frequently found that "whether [D]efendants operate a 'retail or service establishment' is subject to generalized proof on a class-wide basis." *Bayne*, 2021 WL 4822426, at *6 n.3; *see Sydney*, 2021 WL 2662047, at *5 ("find[ing] common proof can answer the question of whether Defendant qualifies for the retail or service establishment exemption"); *Johnson v. Wave Comm GR LLC*, No. 6:10-CV-346, 2011 WL 10945630, at *8  (N.D.N.Y. Oct. 4, 2011) ("whether Wave Comm is a 'retail or service establishment' . . . [is] issue[] that would be common to all class members"), *report and recommendation adopted*, 2011 WL 10945627 (N.D.N.Y. Oct. 25, 2011).  Here, it is undisputed that the income tax preparers performed their job duties pursuant to the same companywide policies.  Thus, each of the proposed class members' claim would be subject to common proof as to whether R&G Brenner qualifies as a retail or service establishment.

As to the second and third prongs, the income tax preparers were also largely paid pursuant to the same policies.  Although the hourly rate paid for each employee raises individualized questions, those individualized questions do not predominate over the common question of whether the class members were employed by a retail or service establishment.  *See Bayne*, 2021 WL 4822426, at *8 (individual question whether plaintiffs were subject to commission sales exemption does not defeat predominance); *Johnson*, 2011 WL 10945630, at *8; *see also Guy v. Absopure Water Co., LLC*, No. 20-CV-12734, 2023 WL 5953225, at *5 (E.D. Mich. Sept. 12, 2023) ("To the extent that differences in Plaintiffs' compensation render them differently situated under the § 207(i) exemption, Absopure fails to provide any explanation as to how such differences nullify the benefits of proceeding collectively.") (internal quotation marks and citation omitted).  Here,

plaintiffs have not claimed that their regular rate of pay was below "one and one-half times the minimum hourly rate" or that they did not receive 50 percent of their compensation in commissions.  Accordingly, this appears to be a case where the exemption will hinge on the nature of the employer's establishment rather than based on any individualized inquiry into whether class members received the threshold weekly wage.

The predominance test "does not require a plaintiff seeking class certification to prove that each element of [his] claim is susceptible to class wide proof," or "that [common] questions will be answered, on the merits, in the favor of the class."  *Hines v. Equifax Info. Services, LLC*, No. 19-CV-6701, 2022 WL 2841909, at *20 (E.D.N.Y. July 16, 2022) (quoting *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 273 (E.D.N.Y. 2019)).  When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016) (internal quotation marks and citation omitted).  In fact, if defendants' argument were accepted, an employer could avoid a class action simply by invoking the retail or service establishment exemption.  *See Bayne*, 2021 WL 4822426, at *6 n.3 (Wage and hour cases typically raise "individualized questions . . . – how many hours were worked, what wages were paid, etc.  Were [d]efendant's argument to be accepted, there would be no class actions in wage and hour cases."); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 345 (S.D.N.Y. 2004) ("Although determinations as to damages, exempt status, and alleged labor agreements will require individualized findings, common liability issues otherwise predominate.").

In addressing the predominance requirement, the Second Circuit specifically rejected the argument that "exemption is an inherently individualized inquiry, such that class treatment will never be appropriate in exemption cases."  *Myers*, 624 F.3d at 549 ("district courts in this Circuit

have certified classes on state law claims that turn on the question of FLSA exemption for a particular group of employees").  Indeed, individual circumstances are inevitably present in a wage and hour class action.  At this stage, however, it is premature to weigh the merits underlying the class members' claims.  *See Montiel-Flores v. JVK Operations Ltd.*, No. 19-CV-3005, 2023 WL 5979209, at \*8, \*9 (E.D.N.Y. Aug. 1, 2023) ("those issues address the merits of Plaintiffs' claims and, therefore, are better addressed at summary judgment or trial"), *report and recommendation adopted*, 2023 WL 6057375 (E.D.N.Y. Sept. 18, 2023).  All that is required at the class certification stage is "that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013); *see Grande v. 48 Rockefeller Corp.*, No. 21-CV-1593, 2023 WL 5162418, at \*23 (S.D.N.Y. Aug. 11, 2023) ("At bottom, defendants' opposition goes to the merits of Plaintiffs' claims, rather than the issues on class certification.") (internal quotation marks and citation omitted).[7]

**b.    Administrative and Professional Exemptions**

Defendants similarly argue that the application of the administrative and professional exemptions would require individualized inquiries that would predominate over common questions. Defendants contend that each named plaintiff had a different educational background and some tax preparers had specialized professional qualifications that would affect their exemption from the overtime requirements.  *See* Defs.' Opp. at 25 ("These individualized factual distinctions are all determinative as to whether each Plaintiff could qualify for the professional exemption.").

---

[7] To the extent that an issue arises that requires an individualized analysis of each employee's pay pursuant to the retail or service exemption, several courts "have concluded that such issues were best addressed at the latter stages of the case, usually in the context of a motion to decertify an FLSA action and/or a Rule 23 class action."  *Johnson*, 2011 WL 10945630, at \*9; *see Jason v. Falcon Data Com, Inc.*, No. 09-CV-03990, 2011 WL 2837488, at \*5-\*6 (E.D.N.Y. July 18, 2011) (argument that technicians' hours worked will be highly individualized "is premature and is more appropriately addressed at the decertification stage"); *accord Lay v. Gold's Gym Int'l., Inc.*, No. 12-CV-754, 2013 WL 5595956, at \*8 (W.D. Tex. Oct. 4, 2013) (deferring "consideration of the effect of potential § 207(i) exemptions at [conditional certification] stage of the proceedings, leaving open the possibility that Gold's Gym may re-raise its concerns at the decertification phase").

The FLSA exempts "bona fide" administrative, executive and professional employees from its overtime and minimum wage protections.  29 U.S.C. § 213(a)(1).  The FLSA's exemptions apply to employees (1) who are compensated on a salary or fee basis at a rate of no less than $684 per week; (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(1)-(3); *see also id.* § 541.2 ("The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.").  An employee is considered to be paid on a salary basis "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602.

### i.    Administrative Exemption

Here, it appears that plaintiffs do not meet the "salary basis" test.  Plaintiffs have established that all tax preparers are paid on a commission-only basis during the tax season.  *See* B. Brenner Tr. at 151, 248-49, Dkt. 86-8; Arena Tr. at 70, Dkt. 86-9; Torres Tr. at 49-51; Employment Agreements, Dkts. 86-15, 86-16, 86-17, 86-18, 86-19, 86-20.  There are no tax preparers who are paid a daily or weekly rate.  *See* B. Brenner Tr. at 248-49, Dkt. 86-8.  Because the prospective class members were not paid on a "salary basis," defendants cannot credibly rely on the FLSA's administrative exemption for purposes of arguing that individual questions will predominate.  *See Leong*, 2023 WL 6226415, at *7 (finding predominance satisfied where exemption "will most likely hinge on the application of the minimum salary threshold"); *Rakeman v. MLD Mortg. Inc.*, No. 16-CV-453, 2020 WL 13566471, at *9 (E.D.N.Y. Dec. 18, 2020) (denying defendants'

summary judgment motion).

In any event, plaintiffs have established that they have materially similar duties across the various office locations. "[E]vidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria . . . will tend to show that the subsidiary questions involved in resolving the exemption will be answerable through evidence generally applicable to the class." *Myers*, 624 F.3d at 549. Thus, common questions surrounding the exemption criteria will predominate over individual questions.

### ii.     Professional Exemption

Defendants also rely on the FLSA's learned professional exemption to show that individual questions will predominate. *See* Defs.' Opp. at 25. In addition to the "salary basis" test, under this exemption, an employee's primary duties must satisfy three requirements: (1) the employee must perform work requiring advanced knowledge; (2) the advanced knowledge must be in a field of science or learning; and (3) the advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction. *See* 29 C.F.R. § 541.301(a).[8]

Here, plaintiffs have demonstrated that the proposed class members have materially similar duties preparing income tax returns for customers. Defendants have not argued that the income tax preparers' responsibilities differed meaningfully from each other. Moreover, defendants do not require their tax preparers to hold a bachelor's or master's degree, or to be a certified public accountant. *See* B. Brenner Tr. at 79-80, Dkt. 88-15. In fact, the only prerequisites for employment as a tax preparer is prior experience preparing income tax returns, passing defendants' internal tests, a license in the state and maintaining continuing education requirements. *Id.* at 80. Here, the class members have acquired their skills by experience, and their jobs do not require a

---

[8] New York's overtime regulation exempts from the definition of "employee" individuals who work in a bona fide executive, administrative, or professional capacity. N.Y. Comp. R. & Regs., tit. 12 § 142-2.14(c)(4). New York's professional exemption, however, has no salary requirement and requires only a duties test. *See id.* § 142-2.14(c)(4)(iii).

specialized degree or licensing as a matter of course.  *See* 29 C.F.R. § 541.301(d) ("the learned professional exemption is not available for occupations that customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes. The learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction.").

For example, in *Pippins v. KPMG, LLP*, 759 F.3d 235 (2d Cir. 2014), the Second Circuit held that KPMG auditors "are precisely the types of professionals the regulations seek to exempt from FLSA—well-compensated professionals at a top national accountancy practice, performing core accountancy tasks."  759 F.3d at 250.  In that case, unlike here, the accountants "are generally required to be either eligible or nearly eligible to become licensed as Certified Public Accountants ('CPAs') . . . [and] in actual fact the vast majority of Audit Associates had accounting degrees and were eligible to take the CPA exam[.]"  *Id.*  Here, while defendants note that some plaintiffs held bachelor's degrees or master's degrees, defendants have not shown that plaintiffs are engaged in a profession "where specialized academic training is a standard prerequisite for entrance into the profession."  *Id.* § 541.301(d).

Regardless of the merits, the Court concludes that plaintiffs have demonstrated that their job duties are substantially similar such that common questions concerning the application of the professional exemption will predominate over individual questions.  *See Heckle v. Matrix Absence Mgmt., Inc.*, No. 21-CV-1463, 2022 WL 17666401, at *7 (S.D.N.Y. Dec. 14, 2022); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 160 (S.D.N.Y. 2008) ("Where, as here, there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as

22

exempt, despite arguments about 'individualized' differences in job responsibilities."). Defendants' blanket policy of treating all income tax preparers as exempt, regardless of their educational background or qualifications, suggests that defendants "believe[] some degree of homogeneity exists among the employees, and is thus in a general way relevant to the inquiry here." *Myers*, 624 F.3d at 549 (internal quotation marks and citation omitted).

### c.    Meal Break

Defendants further argue that plaintiffs have failed to demonstrate predominance regarding their claim that defendants failed to pay them for lunch breaks because each plaintiff testified that they used their lunch breaks differently. *See* Defs.' Opp. at 27-28. On the contrary, this Court finds that plaintiffs have met the predominance requirement regarding defendants' meal break policy. *See Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21-CV-1347, 2024 WL 1157074, at *7 (S.D.N.Y. Mar. 18, 2024); *Onate v. AHRC Health Care, Inc.*, No. 20-CV-8292, 2023 WL 8648167, at *8 (S.D.N.Y. Dec. 14, 2023). First, plaintiffs have provided sufficient evidence that there was a companywide policy of automatically clocking them out for their lunch breaks, without verifying whether the employee worked through lunch. *See* Arena Tr. at 91-92, Dkt. 86-9; *Gonzalez*, 2024 WL 1157074, at *5 ("all Class members were also subject to the same policy by which Defendants automatically deducted a thirty-minute meal break, even though employees were made to work through that break"); *Onate*, 2023 WL 8648167, at *8.

Second, while there is no evidence of a written policy of requiring employees to perform uncompensated work during lunch, plaintiffs testified that they worked during some or all of their lunch breaks. *See, e.g.*, Adolphus Tr. at 134-39, Dkt. 86-3; Drayton Tr. at 93-97, Dkt. 86-4; *Gonzalez*, 2024 WL 1157074, at *6 (relying on "declarations from 18 employees in varied roles . . . all affirming that they were made to work through lunch every day"); *Onate*, 2023 WL 8648167, at *8.

Third, whether defendants had actual or constructive knowledge of uncompensated hours resulting from the meal break policy is an issue common to the class. *See Onate*, 2023 WL 8648167, at *8.

Generally, defendants argue that courts are reluctant to find the predominance requirement satisfied where off-the-clock work is at issue. *See* Defs.' Opp. at 26. However, where, as here, common issues relating to off-the-clock work predominate over individual questions relating to damages, courts frequently find that Rule 26(b)(3) is satisfied.[9] *See, e.g., Gonzalez*, 2024 WL 1157074, at *6 ("[e]ach of these are claims based on Defendants' class-wide policies and do not depend on an individual employee's circumstances"); *Montiel-Flores*, 2023 WL 5979209, at *10 ("While Defendants contend that individual inquiries related to analysis of hours worked by JVK employees in the putative class exist and that their rounding policy is lawful or violated rights on a '*de minimis* basis,' . . . the resolution of the legality of Defendants' consistently applied policies are issues that predominate this case."); *Grande*, 2023 WL 5162418, at *24 ("rounding policies, off-the-clock work, spread of hours pay, and meal breaks . . . are subject to generalized, rather than individual, proof") (internal quotation marks and citation omitted); *Lawrence v. NYC Med. Prac., P.C.*, No. 1:18-CV-8649, 2021 WL 2026229, at *11 (S.D.N.Y. May 20, 2021) (granting class certification of off-the-clock claims, where plaintiffs "would come in early, stay late, work through lunch, and continue working at home after leaving the office and on weekends").

In sum, while "[s]ome factual variation among the circumstances of the various class

---

[9] The cases cited by defendants are inapposite. *See* Defs.' Opp. at 26-27. In *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401 (S.D.N.Y. 2018), the court found that there were significant questions as to the merits of whether the class plaintiffs could show that they worked so many hours that their effective hourly wage rate fell below the minimum wage. *Id.* at 418-19. *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279 (S.D.N.Y. 2015), was abrogated by the Second Circuit in *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020), which found that the district court conflated the standards for conditional certification under section 216(b) with Rule 23 class certification. *Ruiz* also pre-dates the Supreme Court's decision in *Tyson Foods* where it found that representative proof of hours worked can be used to establish liability in a wage and hour case. 577 U.S. at 455-56. In *Gregory*, unlike here, the court found that defendant had rebutted plaintiffs' claims that it had a company-wide policy of pressuring its employees to perform off-the-clock work. *See Gregory v. Stewart's Shops Corp.*, No. 7:14-CV-33, 2016 WL 8290648, at *11 (N.D.N.Y. July 8, 2016), *report and recommendation adopted*, 2016 WL 5409326 (N.D.N.Y. Sept. 28, 2016).

members is inevitable," Rule 26(b)(3)'s predominance requirement is satisfied.  *See Bayne*, 2021 WL 4822426, at *8 ("This Court is unwilling to recommend denial of class certification for lack of commonality based on the argument that the claims of some class members may be subject to an unproven, and likely unprovable, affirmative defense."); *Onate*, 2023 WL 8648167, at *8 (finding predominance satisfied as to meal break policy).

      **2.**    **Superiority**

The proposed class action must also satisfy the second prong of Rule 23(b)(3), which requires a court to find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In analyzing this requirement, the court must consider:  "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).  Together, the predominance and superiority requirements were designed to "cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated."  *Amchem*, 521 U.S. at 615 (internal quotation marks and citation omitted).

Plaintiffs have amply met the superiority requirement here.  It is unlikely that the class members would engage in individual actions because doing so would be unduly burdensome due to the individual cost of litigation.  *See Montiel-Flores*, 2023 WL 5979209, at *10; *Onate*, 2023 WL 8648167, at *6.  Courts in this Circuit have consistently held that "a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants."  *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126

(S.D.N.Y. 2014); *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (finding the superiority requirement was met where litigation costs were likely to exceed any recovery and some class members were still employed with the defendants).  As discussed above, because common issues predominate over any individual issues regarding a class member's potential exemptions, there are no obstacles to case management.  *See Mendez*, 2019 WL 2504613, at *13.  In addition, because the class is composed of individuals who worked in the New York metropolitan area, adjudication of the claims in this forum is appropriate. *See Onate*, 2023 WL 8648167, at *6.  Accordingly, the Court finds that plaintiffs have satisfied the superiority requirement.

Because plaintiffs have satisfied all of the requirements for Rule 23(a) and (b)(3), this Court recommends granting the motion for class certification.

### F.    Class Counsel

Finally, the NHG Law Group, P.C. moves for its appointment as class counsel.  *See* Pls.' Mem. at 16-17.  Federal Rule of Civil Procedure 23(g) states that "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  In appointing counsel, the Court must consider (i) "the work counsel has done in identifying or investigating potential claims in the action"; (ii) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (iii) "counsel's knowledge of the applicable law"; and (iv) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

Here, counsel has offered evidence demonstrating that he has knowledge of the applicable law based on his extensive work in similar cases.  *See* Declaration of Keith Williams ¶¶ 29-34, Dkt. 86-2.  Counsel further avers that his office "has committed significant resources to representing the Class Members and will continue to do so."  *Id.* ¶ 35.  Counsel has met the above factors and defendants have not argued otherwise.  The Court therefore recommends appointing the NHG Law

Group, P.C. as class counsel.  *See Mendez*, 2019 WL 2504613, at *13.

### G.    Notice

Plaintiffs request authorization to disseminate a proposed notice to all class members.  Dkt. 86-24.  "For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "The notice must clearly and concisely state in plain, easily understood language:  (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  *Id.*

In the event the Court granted plaintiffs' motion for class certification, defendants request amending the proposed notice to include language distinguishing the class notice from the collective action notice many of the class members received in October 2021.  *See* Defs.' Opp. at 17 n.59.  Defendants further request that the Court extend the opt-out period for at least 60 days. *Id.*  Since plaintiffs failed to address defendants' arguments in their reply brief, the Court further recommends denying plaintiffs' request to disseminate their proposed notice and instead directing the parties to confer and submit a joint revised class notice for Court approval.

### Conclusion

For the foregoing reasons, the Court respectfully recommends granting plaintiffs' motion to certify a class consisting of all income tax preparers who worked for defendants from March 13, 2014 until the present.  A copy of this Report and Recommendation is being electronically served on counsel.

Any objections to the recommendations made in this Report must be filed with the Honorable Rachel P. Kovner within 14 days after the filing of this Report and Recommendation and, in any event, on or before **July 8, 2024**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

**SO ORDERED**

Dated:  Brooklyn, New York
        June 21, 2024

                                    s/ James R. Cho
                                    James R. Cho
                                    United States Magistrate Judge