UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

AVE CINAR, CELESTE DRAYTON,
NICOLE ADOLPHUS, DARLENE RIERA,
and STUART BARON, individually and on
behalf of all others similarly situated,

                    Plaintiffs,

          -against-

R&G BRENNER INCOME TAX, LLC,
SUMMIT CONSULTANTS, INC., APEX
PLANNING INC., and BRENJAMIN K.
BRENNER,

                   Defendants.
-------------------------------------------------------x

**MEMORANDUM AND ORDER**
20-CV-1362 (RPK) (JRC)

RACHEL P. KOVNER, United States District Judge:

      This memorandum and order addresses three outstanding items in this Fair Labor Standards Act and New York Labor Law wage-and-hour litigation. *First*, the Court resolves its own *sua sponte* order to show cause by finding that plaintiffs have established standing at this stage in the litigation to bring their wage-notice and wage-statement claims under New York Labor Law §§ 195(1) and 195(3). *Second*, the Court adopts Magistrate Judge Cho's report and recommendation ("R. & R.") and grants the plaintiffs' motion to certify a class for their NYLL claims, with the exception that the class period must have a defined end date. *See* Pls.' Mem. of L. in Supp. of Pls.' Mot. for Class Certification ("Pls.' Mot. for Class Certification") (Dkt #86-1); R. & R. (Dkt. #102). *Third*, the Court denies plaintiffs' motion to dismiss defendants' counterclaims against plaintiff Ave Cinar for breach of contract and breach of fiduciary duty. *See* Pls.' Mem. of L. in Supp. of Pls.' Mot. to Dismiss Defs.' Counterclaims ("Pls.' Mot. to Dismiss") (Dkt. #90-1).

1

## BACKGROUND

Defendants operate a business called "R&G Brenner Income Tax Centers" (hereinafter "R&G Brenner") that provides income tax preparation services at its various locations around the New York City metropolitan area.  R. & R. at 2.  Plaintiffs were employed by R&G Brenner as income tax preparers at different offices.  *Ibid.*  All or nearly all tax preparers employed by R&G Brenner were paid on a commission-only basis.  *Ibid.*; Benjamin Brenner Dep. 248:23–249:22 (Dkt. #86-8).  During the annual tax season (from January through approximately mid-May), each preparer would receive their pay in the form of a weekly advance, which would be deducted from their final gross commissions at the end of the tax season.  R. & R. at 2–3.  R&G Brenner also withheld other deductions from the tax preparers' gross commissions when calculating their net, payable commission at the end of the season.  *Id.* at 3.  Tax preparers paid in this manner did not receive overtime compensation because they were classified by R&G Brenner as exempt employees under the administrative, professional, and/or retail sales exemptions.  *Ibid.*

Plaintiff Ave Cinar filed this lawsuit in March 2020, naming only R&G Brenner Income Tax, LLC as defendant.  Compl. (Dkt. #1).  Plaintiff alleged that R&G Brenner's failure to pay overtime violated both the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  *See id.* ¶¶ 42–55, 68–75.  She also alleged that R&G Brenner had failed to provide employees with required weekly wage statements, in violation of NYLL § 195(3).  *Id.* ¶¶ 76–79.  Her complaint indicated that she sought both collective action treatment for her FLSA claim as well as to certify a Federal Rule of Civil Procedure 23(b)(3) class for her state-law claims.  *Id.* ¶¶ 1, 56–67.  Defendant R&G Brenner Income Tax, LLC answered, asserting among other defenses that plaintiff Cinar breached her employment contract and was an unfaithful servant

because she "wrongfully competed and directed clients from Defendant to Plaintiff [sic] personal business."  Answer ¶¶ 83, 104–05 (Dkt. #15).

In April 2021, plaintiff moved for conditional certification of a FLSA collective action on behalf of all income tax preparers employed by R&G Brenner.  R. & R. 4.  In September, Magistrate Judge Cho granted plaintiff's motion in substantial part, and notice was distributed to 91 identified current and former income tax preparers employed by R&G Brenner since March 13, 2017.  *See ibid.*  Seven employees filed consents to join plaintiff's collective action, though two later withdrew their consent and plaintiff's counsel withdrew from representation of a third.  *Ibid.*; *see* Withdrawal of Consent (Lurie) (Dkt. #56); Withdrawal of Consent (Minovich) (Dkt. #58); May 6, 2022 Min. Entry (Dkt. #53).

In September 2023, pursuant to a joint stipulation by the parties, plaintiff filed an amended complaint.  Joint Stipulation (Dkt. #71); Am. Compl. (Dkt. #72).  This complaint added the four employees who opted-in to the action as named plaintiffs alongside Cinar and dropped the FLSA collective action allegations.  Joint Stipulation ¶ 3; Am. Compl. 1.  The stipulation expressly "reserve[d] all rights to seek class certification of [plaintiffs'] state law claims under Fed. R. Civ. P. 23," and the amended complaint again stated that plaintiffs sought to certify a class action for their NYLL claims.  Joint Stipulation ¶ 3; Am. Compl. ¶¶ 1, 231–49.  The amended complaint also added three additional counts under the NYLL alleging that defendants had failed to provide plaintiffs with required wage notices under NYLL § 195(1), that defendants had withheld certain unlawful deductions from plaintiffs' wages, and that defendants had failed to pay plaintiffs as frequently as required by the NYLL.  Am. Compl. ¶¶ 271–74, 279–95.  Finally, plaintiffs named as additional defendants Summit Consultants, Inc. and Apex Planning Inc., which the parties

agreed jointly operated the partnership that employed plaintiffs as tax preparers, and Benjamin Brenner, the 100% owner of Summit Consultants.  Joint Stipulation ¶ 4, Am. Compl. ¶¶ 8–51.

In their answer to plaintiffs' amended complaint, defendants for the first time pleaded breach-of-contract and breach-of-fiduciary-duty counterclaims against plaintiff Cinar.  Answer to Am. Compl. 44–47 ¶¶ 28–55 (Dkt. #79).  These counterclaims alleged that, while employed by R&G Brenner, Cinar was secretly preparing tax returns for personal clients, including for clients of R&G Brenner she had encountered through her employment.  *Ibid.*  Cinar's employment agreement contained provisions agreeing to, *inter alia*, keep confidential Brenner client information; refrain from competing against R&G Brenner while employed there; and for two years following the termination of her employment, refrain from poaching R&G Brenner clients or engaging in any income tax preparation services at all within a certain distance of a R&G Brenner office.  *Id.* at 40–42 ¶¶ 19–21.  Defendants alleged that Cinar breached these contractual provisions as well as her fiduciary duty of loyalty to R&G Brenner.  *Id.* at 44–47 ¶¶ 28–55.  Defendants sought money damages as well as a permanent injunction enforcing the terms of Cinar's employment agreement.  *Id.* at 46–47 ¶¶ 41, 56–57.

In January 2024, about two months after the amended complaint was filed, plaintiffs moved to certify a Federal Rule of Civil Procedure 23(b)(3) class action for their NYLL claims.  *See* Pls.' Mot. for Class Certification.  The Court referred that motion to Magistrate Judge Cho, who issued a report and recommendation that recommended it be granted in substantial part.  *See* R. & R. 1.  Defendants timely filed objections to that report.  *See* Defs.' Objs. (Dkt. #103).  Plaintiffs filed a response to defendants' objections.  *See* Pls.' Resp. to Defs.' Objs. (Dkt. #104).

In January, plaintiffs also moved to dismiss defendants' counterclaims against plaintiff Cinar under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that the Court

lacked supplemental jurisdiction over the counterclaims, that the breach-of-fiduciary-duty claim was untimely, and that defendants had failed to plead their entitlement to injunctive relief.  *See* Pls.' Mot. to Dismiss.

Finally, in August, the Court *sua sponte* directed plaintiffs to show cause why their NYLL wage-notice and wage-statement claims should not be dismissed for lack of standing.  *See* Aug. 27, 2024 Order to Show Cause.  Plaintiffs responded with, among other things, declarations from four of the five named plaintiffs alleging that they had not received compliant wage notices and statements and that, as a result, they mistakenly believed themselves to be salaried employees exempt from the overtime requirements.  *See* Pls.' Mem. of L. in Resp. to the Court's Order to Show Cause ("Pls.' Resp. to Order to Show Cause") (Dkt. #108); Cinar Decl. (Dkt. #108-2); Drayton Decl. (Dkt. #108-3); Riera Decl. (Dkt. #108-4); Baron Decl. (Dkt. #108-5).  Defendants filed a reply asking plaintiffs' claims to be dismissed, arguing that their allegations were insufficient to show a concrete injury sufficient for standing.  *See* Defs.' Mem. of L. in Resp. to the Court's Order to Show Cause ("Defs.' Resp. to Order to Show Cause") (Dkt. #109-5).

## DISCUSSION

For the reasons explained below, plaintiffs' wage-notice and wage-statement claims are not dismissed, plaintiffs' motion to certify a state-law class action is granted, and plaintiffs' motion to dismiss defendants' counterclaims is denied.

## I.   Plaintiffs' Standing to Bring NYLL Wage-Notice and Wage-Statement Claims

The Court *sua sponte* ordered plaintiffs to show cause why their wage-notice and wage-statement claims under NYLL §§ 195(1) and 195(3) should not be dismissed for lack of standing.  *See* Aug. 27, 2024 Order to Show Cause.  Plaintiffs' supplemental submissions set forth facts sufficient to establish standing on these claims.

5

A.      **Standard of Review**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "[A] district court can dismiss an action for lack of subject-matter jurisdiction under Rule 12(b)(1) *sua sponte*." *Fountain v. Karim*, 838 F.3d 129, 133 n.5 (2d Cir. 2016).  In assessing whether a claim should be dismissed for lack of subject-matter jurisdiction under this rule, a court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  "But 'where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings.'" *Ibid.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)) (brackets omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

B.      **Analysis**

Plaintiffs have adequately pleaded standing.  The federal judicial power is limited to the adjudication of "Cases" and "Controversies."  U.S. Const. art. III, § 2.  "'Under Article III, a case or controversy can exist only if a plaintiff has standing to sue,' meaning a personal stake in the outcome of the litigation." *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 45 (2d Cir. 2023) (en banc) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)).  Standing does not exist in every case in which "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).  Instead, to establish standing, "a plaintiff must show (i) that he has suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and

6

(iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A "concrete" harm is one that "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *Id.* at 417 (quoting *Spokeo*, 578 U.S. at 340–41). Applying these standards to NYLL wage-notice and wage-statement claims, the Second Circuit has explained that "a plaintiff cannot rely on technical violations of the Labor Law" to establish standing. *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 2024 WL 3997427, at *3 (2d Cir. 2024) (quotation marks and citation omitted). A plaintiff may establish standing, however, by establishing "some causal connection between the lack of accurate notices and [a] downstream harm." *Id.* at *5.

Plaintiffs' supplemental submissions contain adequate allegations of downstream harm. To be sure, plaintiffs' amended complaint itself alleges purely technical violations of the NYLL's notice requirements. *See* Am. Compl. ¶¶ 271–78. But considering plaintiffs' declarations as well, which the Court may on a Rule 12(b)(1) motion, *see Harty v. West Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022), plaintiffs have adequately pleaded concrete injuries from defendants' alleged wage-notice and wage-statement violations. Each alleges that the plaintiff did not receive wage notices and statements containing, among other things, accurate information about their "rates and frequency of pay, and what types of allocations and deductions would be made from [their] wages." Cinar Decl. ¶ 5; *accord* Drayton Decl. ¶ 5; Riera Decl. ¶ 5; Baron Decl. ¶ 5. Because of this, plaintiffs allege that they did not realize they were misclassified as exempt employees and thus underpaid. *E.g.*, Cinar Decl. ¶¶ 6–8. Had they received the correct information, they allege, they "would have confronted Defendants and advocated for the proper payment of wages." *Id.* ¶ 10; *accord e.g.*, Drayton Decl. ¶ 10.

These allegations suffice to plead concrete injury.  *See Guthrie*, 2024 WL 3997427, at *5 (noting a plaintiff may establish standing by "show[ing] that he or she would have undertaken . . . advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided"); *Reyes v. Crystal Window & Door Sys., Ltd.*, No. 23-CV-2578, 2024 WL 4028308, at *4 (E.D.N.Y. Sept. 3, 2024) (finding standing satisfied where plaintiffs pleaded "that (1) their notices listed an inaccurate overtime rate and pay frequency; (2) as a result, they were kept in the dark about how much and how often they should be paid; (3) they suffered harms in the form of under- and late payments; and (4) had they received the proper disclosures, they would have advocated for themselves and 'acted to rectify the situation' sooner"); *Santamaria v. Vee Techs., Inc.*, No. 22-CV-4472, 2024 WL 1216579, at *8 (S.D.N.Y. Mar. 21, 2024) ("Santamaria claims that she suffered an injury because she was misclassified and therefore underpaid.  So, according to Santamaria, the informational harm—the fact that she wasn't advised that she was due overtime if she worked overtime hours—led to a concrete injury here.  That is, Santamaria didn't know she was supposed to be paid overtime, and so she lost out on the ability to advocate for it and be paid according to the law's requirements.").

Defendants principally argue that plaintiffs did not suffer any injury from the alleged NYLL violations because they received statements that accurately reflected the compensation structure that they agreed to at the outset of their employment and the amounts that they were actually paid.  Defs.' Resp. to Order to Show Cause 7–12.  Whether or not that is true, the NYLL requires an employer's wage notices and statements to state, among other things, an employee's "regular hourly rate and overtime rate of pay" for any employee "not exempt from overtime compensation" under New York law.  NYLL § 195(1), (3).  It is undisputed that the plaintiffs' employment agreements and paystubs did not list this information.  *See* Pls.' Employment

Agreements (Dkt. #109-2); Pls.' Paystubs (Dkt. #108-6).  Assuming, as the Court must, that plaintiffs were in fact non-exempt employees owed overtime compensation, this states a violation of the NYLL's wage-notice and wage-statement provisions.  *See Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 466–69 (E.D.N.Y. 2015) (finding a violation of NYLL § 195(3) where, though employer's wage statements accurately listed the number of overtime hours plaintiffs were actually paid for, they did not list overtime hours plaintiffs, by law, *should* have been paid for).  And it is at least plausible that if plaintiffs had received wage statements which corrected their misimpression that they were exempt, salaried employees, they would have then demanded the overtime compensation they were statutorily entitled to.  *See Guthrie*, 2024 WL 3997427, at *5; *Reyes*, 2024 WL 4028308, at *4; *Santamaria*, 2024 WL 1216579, at *8.  Plaintiffs have adequately pleaded standing.

Defendants also argue that the wage-notice and wage-statement claims should be dismissed at least as to plaintiff Nicole Adolphus because she did not submit a declaration attesting to any injuries.  Defs.' Resp. to Order to Show Cause 7.  But the Court's order to show cause called into question the sufficiency of plaintiffs' legal allegations—the type of challenge ordinarily raised through a motion to dismiss under Rule 12(b)(1).  And motions to dismiss typically test the allegations in plaintiffs' pleadings without requiring the submission of admissible evidentiary support.  Here, plaintiffs have supplemented the amended complaint in the case of Adolphus by representing that she suffered the same injuries as alleged by the other named plaintiffs, is willing to testify to that end, and did not submit a sworn declaration saying so only because of the short notice provided by the Court.  Pls.' Resp. to Order to Show Cause 10 n.4.  Since plaintiffs generally are not required to submit sworn affidavits regarding standing at the motion-to-dismiss stage, and defendants have not controverted plaintiffs' representations regarding Adolphus with any

evidence, the Court takes into account plaintiffs' representations regarding Adolphus and declines to dismiss plaintiff Adolphus's wage-notice and wage-statement claims.

## II.   Plaintiffs' Motion to Certify a Class

Magistrate Judge Cho recommended granting plaintiffs' motion to certify a Federal Rule of Civil Procedure 23(b)(3) class consisting of all tax preparers who were employed by R&G Brenner between March 13, 2014 and the present.  R. & R. 27.  The Court overrules defendants' objections and adopts Judge Cho's report and recommendation in substantial part.  The timing of plaintiffs' motion did not prejudice defendants, individual issues do not predominate over common questions, and plaintiffs' proposed class is sufficiently numerous for class treatment.

### A.   Standard of Review

The standard of review a district court should use when considering an order or recommendation from a magistrate judge depends on whether the issue is "dispositive of a party's claim or defense."  Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1).  If a party timely objects to a magistrate judge's recommendation on a dispositive issue, the district court must "determine de novo" those parts of the ruling that have been "properly objected to."  Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).  Motions for class certification are treated as dispositive matters under Rule 72.  *Gortat v. Capala Bros., Inc.*, No. 07-CV-3629, 2010 WL 1423018, at *1 (E.D.N.Y. Apr. 9, 2010); *see* 28 U.S.C. § 636(b)(1)(A).

Those parts of an R. & R. that are uncontested or not properly objected to are reviewed, at most, for clear error.  *Alvarez Sosa v. Barr*, 369 F. Supp. 3d 492, 497 (E.D.N.Y. 2019).  Clear error will only be found if, on review of the entire record, the court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Bershchansky*, 788 F.3d 102, 110 (2d Cir. 2015) (citation omitted).

### B.    Legal Standard

To certify a class, plaintiffs must satisfy the four prerequisites of Federal Rule of Civil Procedure 23(a).  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).  These elements are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defense of the class; and (4) the representative parties will fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a); *see Elisa W. v. City of New York*, 82 F.4th 115, 122 (2d Cir. 2023).  Additionally, plaintiffs must meet the requirements of one of the three types of class actions listed in Fed. R. Civ. P. 23(b).  A Rule 23(b)(3) class action, which plaintiffs seek to certify here, requires showing that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Roach*, 778 F.3d at 405 (quoting Fed. R. Civ. P. 23(b)(3)).  The first (b)(3) requirement, known as "predominance," is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Ibid.* (citation omitted).

The Second Circuit "has also recognized an implied requirement of ascertainability in Rule 23, which demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  *In re Petrobas Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (quotation marks and citation omitted).  The party seeking class certification bears the burden of establishing by a preponderance of the evidence that the Rule 23 elements are met.  *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202–03 (2d Cir. 2008).

11

C.       Analysis

Defendants object to the R. & R. on three grounds: the timeliness of plaintiffs' motion and the requirements of predominance and numerosity.

1.       Prejudicial Delay

Defendants' first objection is that plaintiffs' motion for class certification was untimely. "Class certification is to be decided 'at an early practicable time' after the commencement of a suit." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 215 (2d Cir. 2004) (quoting Fed. R. Civ. P. 23(c)(1)(A)). But "the untimeliness of a class-certification motion, in and of itself, will not justify denying class status to the action." *Saravia v. 2799 Broadway Grocery LLC*, No. 12-CV-7310, 2014 WL 2011720, at *2 (S.D.N.Y. May 16, 2014). "A motion for class certification should be denied as untimely only when the late timing of the determination may cause prejudice or unduly complicate the case." *Acticon AG v. China Ne. Petroleum Holdings Ltd.*, 687 F. App'x 10, 12 (2d Cir. 2017) (brackets, quotation marks and citation omitted).

On balance, the timing of plaintiffs' motion for class certification has not prejudiced defendants. While the motion comes more than three years after the original complaint in this case was filed, *see* Defs.' Objs. 5, defendants have been on notice throughout the litigation that plaintiffs intended to seek class treatment for their NYLL claims. Plaintiffs' original complaint was clear— both its caption and its substantive allegations stated that plaintiffs sought class treatment. Compl. ¶¶ 1, 56–67; *see Acticon AG*, 687 F. App'x at 12 ("[D]efendants had ample notice that the action was a putative class action because the caption and prayer for relief in Acticon's prior complaints indicated its intent to seek class status."); *In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14-CV-7990, 2017 WL 4541434, at *4 (S.D.N.Y. Oct. 10, 2017) (similar); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 206 (S.D.N.Y. May 22, 2006) (similar). Moreover, plaintiffs moved for class certification just two months after filing their amended complaint, which was filed on consent

12

via a joint stipulation that included an express reservation of plaintiffs' rights "to seek class certification of their state law claims under Fed. R. Civ. P. 23." Joint Stipulation ¶ 3. And discovery had not yet been completed when plaintiffs moved for class certification. *Cf. Luo v. Panarium Kissena Inc.*, No. 15-CV-3642, 2020 WL 9456895, at *6 (E.D.N.Y. Sept. 16, 2020) (denying class certification where plaintiffs waited until almost a year after the close of discovery to file their motion), *report and recommendation adopted*, 2021 WL 1259621 (E.D.N.Y. Apr. 6, 2021); *Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-CV-7342, 2022 WL 596831, at *17 (S.D.N.Y. Feb. 25, 2022) (denying class certification where plaintiffs waited four months after close of discovery). Considering that plaintiffs have consistently indicated that they would seek class certification, and that discovery is not yet complete, defendants have not suffered prejudice from plaintiffs' failure to seek certification at an earlier date.

### 2. Predominance

Defendants next object that Rule 23(b)(3)'s predominance requirement is not met with respect to plaintiffs' overtime claim. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "The requirement's purpose is to ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Ibid.* (brackets, quotation marks, and citation omitted). Predominance "is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if

these particular issues are more substantial than the issues subject only to individualized proof." *Ibid.* (quotation marks and citation omitted).

The R. & R. found that plaintiffs' claim that defendants maintain a company-wide policy of misclassifying employees as exempt from overtime obligations raises a common question, capable of generalized proof, that predominates over individualized issues.   R. & R. 15. Defendants object that class treatment is inappropriate because individualized inquiries will be required to determine whether plaintiffs fall within the NYLL overtime exceptions for (i) certain employees of retail or service establishments and (ii) administrative or professional employees. Defs.' Objs. 6–9.  Defendants' objections are without merit.

### a.     Retail or Service Establishment Exemption

Common questions will predominate in determining whether class members fall within the NYLL overtime exception for certain retail or service employees.  To qualify for the NYLL's retail or service exemption, (1) the employee must be employed by a "retail or service establishment," (2) the employee's regular rate of pay must exceed "one and one-half times the minimum hourly rate," and (3) more than half of the employee's compensation "represents commissions on goods or services."  29 U.S.C. § 207(i) (FLSA); *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (incorporating FLSA's overtime exemptions).

Defendants do not meaningfully dispute that the first element—whether R&G Brenner constitutes a "retail or service establishment"—is a common question subject to generalized proof. *See* Defs.' Objs. 7; *Bayne v. NAPW, Inc.*, No. 18-CV-3591, 2021 WL 4822426, at *6 n.3 (E.D.N.Y. Aug. 10, 2021) ("Whether Defendants operate a 'retail or service establishment' is subject to generalized proof on a class-wide basis."), *report and recommendation adopted*, 2021 WL 4820603 (Oct. 15, 2021).  Instead, defendants argue that the second two elements will cause

individual questions to predominate because the details of individual employees' compensation structures and weekly hours worked varied person-by-person.  Defs.' Objs. 7–8.

Contrary to defendants' claims, the common question of whether R&G Brenner qualifies as a retail or service establishment will predominate over other individualized details, like the effective hourly rate paid for each employee, which appear capable of simple calculation by reference to time and pay records.  In wage-and-hour cases, "there will always be individualized questions that relate equally to both liability and damages—how many hours were worked, what wages were paid." *Bayne*, 2021 WL 4822426, at *6 n.3.  But "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 293 F.R.D. 287, 306 (E.D.N.Y. 2013) ("Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria, thus rendering unnecessary an evidentiary hearing on each claim." (citation omitted)).  That appears to be the case here.  *See* R. & R. 17–19.  And, as class discovery proceeds, if the "retail or service establishment" prong is not resolved in plaintiffs' favor and if regular rate calculations for the class turn out to be dramatically more variable and/or complex than anticipated, defendants have the option of moving for decertification.  *See Johnson v. Wage Comm GR LLC*, No. 10-CV-346, 2011 WL 10945630, at *9 (N.D.N.Y. Oct. 4, 2011) (collecting cases concluding that concerns about variability in whether employees were paid one and one-half times the applicable minimum wage were better reserved for a motion to decertify), *report and recommendation adopted*, 2011 WL 10945627 (N.D.N.Y. Oct. 25, 2011).

**b.**     **Administrative and Professional Exemptions**

Common questions also predominate in determining whether plaintiffs fall within the NYLL overtime exception for certain administrative and professional employees.

To qualify for the administrative exemption, an employee, among other requirements, must be paid on a salary basis.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4)(ii).  As the R. & R. found, plaintiffs have advanced substantial evidence showing that all or nearly all R&G Brenner tax preparers are paid on a commission-only basis during tax season, which would mean that none qualify for the administrative exemption.  R. & R. 20.  Defendants do not object to this finding.  On the evidence presented, plaintiffs have thus met their burden to show that common questions about the administrative exemption predominate over individualized ones.

As for the professional exemption, unlike the FLSA, the NYLL does not include a requirement that employees be paid on a salary basis. *Dingwall v. Friedman Fisher Assocs., P.C.*, 3 F. Supp. 2d 215, 220 (N.D.N.Y. 1998); *compare* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4)(iii), *with* 29 C.F.R. § 541.300(a).  Instead, whether an employee qualifies as a "professional" turns on the duties performed by the employee.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4)(iii).  A professional is an employee "whose primary duty consists of the performance of work[] requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study." *Ibid.* The class definition is limited to only those R&G Brenner employees who held the role of "income tax preparer[]"—the duties of which were defined by a company-wide policy manual from which employees were not permitted to deviate.  Pls.' Mot. for Class Certification 10.  Whether this job fits the definition of a "professional" under the FLSA is therefore a question common to the entire class.

16

Defendants protest that certain employees within the class may have, at times, taken on additional responsibilities at R&G Brenner. Defs.' Objs. at 9; Defs.' Mem. of L. in Opp. to Pls.' Mot. for Class Certification 26 (Dkt. #87). They identify two examples, both tax preparers who in certain years also served as office managers. Defs.' Mem. of L. in Opp. to Pls.' Mot. for Class Certification 26. No matter—the fact that an employee here-and-there may have occasionally pulled double duty does not pose a significant risk of permitting individualized inquiries to overwhelm. *See Tyson Foods*, 577 U.S. at 453 (predominance not defeated by the existence of "affirmative defenses peculiar to some individual class members").

### 3.    Numerosity

Defendants' final objection relates to the Rule 23(a)(1) requirement of numerosity (styled in their papers as "efficiency"). Rule 23(a)(1) requires the putative class to be "so numerous that joinder of all members is impracticable." "[N]umerosity is generally presumed at a level of 40 or more members." *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 n.20 (2d Cir. 2021) (brackets, quotation marks, and citation omitted).

Via the FLSA collective action procedure, plaintiffs identified 87 putative class members, not including themselves, who worked for R&G Brenner from March 13, 2017 through September 29, 2021. Pls.' Mot. for Class Certification 12. They also credibly allege that there exist more employees whose employment predated the FLSA's three-year statute of limitations but fell within the NYLL's longer, six-year limitations period. *Ibid.*; *see Huang v. Shanghai City Corp.*, No. 19-CV-7702, 2022 WL 1468450, at *15 (S.D.N.Y. May 10, 2022) ("[T]here must have been additional employees who worked during the six-year period but not during the three-year period"). Defendant Brenner himself states that there exist 28 additional tax preparers fitting this description, as well as two more that were hired after the FLSA notice was distributed. Benjamin Brenner Decl. ¶ 7 (Dkt. #87-13). Numerosity is therefore satisfied.

17

Defendants object, noting that, of the total number of employees identified by plaintiffs for their FLSA collective action claims, only seven opted-in.  Defs.' Objs. 10.  Two of these seven subsequently withdrew their consent, and plaintiffs' counsel withdrew from representation of a third, leaving a grand total of five identified plaintiffs in this action.  *Ibid.*  But as the R. & R. noted, *see* R. & R. 9, courts in this Circuit routinely assess the numerosity requirement in a hybrid FLSA-NYLL case by reference to the total number of affected employees, finding it satisfied even if the number of actual collective action opt-ins is low.  *See, e.g.*, *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 242 & n.5, 252 (2d Cir. 2011) (finding numerosity satisfied by a class size of 275 employees, despite only 25 opting in to the FLSA action); *Huang*, 2022 WL 1468450, at *14–15 (two opt-ins, 46 total employees); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 197–99 (S.D.N.Y. 2011) (three opt-ins, at least 71 total employees); *Jankowski v. Castaldi*, No. 01-CV-164, 2006 WL 118973, at *2 (E.D.N.Y. Jan. 13, 2006) (approximately 40 opt-ins, at least 450 total employees); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 266–67 (D. Conn. 2002) (22 opt-ins, 281 total employees); *see also Meyers v. Crouse Health Sys., Inc.*, 274 F.R.D. 404, 414 (N.D.N.Y. 2011) ("Courts in the Second Circuit . . . assess numerosity based on the number of proposed class members rather than the number of opt-ins.").  Because employees may choose not to opt in to a FLSA collective action for any number of reasons, *see, e.g.*, *Shahriar*, 659 F.3d at 244 ("[A]n employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA rights."), it does not follow, as defendants argue, that employees who decline to opt in to such an action will also opt-out of the NYLL class.  Accordingly, defendants' objections to numerosity are overruled.

### 4.      Remainder of the R. & R.

Defendants did not file objections to the remainder of the R. & R., including Judge Cho's

analysis of predominance with respect to plaintiffs' wage-notice, wage-statement, unlawful deduction, and pay-frequency claims; the Rule 23(a) requirements of commonality, typicality, and adequacy; the Rule 23(b)(3) requirement of superiority; and the implied requirement of ascertainability.  Defendants also did not object to Judge Cho's recommendation that NHG Law Group, P.C. be appointed class counsel, and neither plaintiffs nor defendants objected to Judge Cho's recommendation that the parties be directed to meet and confer and submit a joint revised class notice for approval.  *See* R. & R. 26–27.  Having reviewed the unobjected-to portions of the R. & R. and finding no clear error, the Court adopts these recommendations as well.

Finally, while plaintiff's proposed class period extends through the "present," a class period requires "a clear end-date."  *Hart v. Rick's NY Cabaret Int'l, Inc.*, No. 09-CV-3043, 2013 WL 11272536, at *5 (S.D.N.Y. Nov. 18, 2013) (compiling authorities).  Accordingly, the parties are directed to confer and to file a joint letter proposing a definite end date for plaintiffs' class, within thirty days of this order.

## III.    Plaintiffs' Motion to Dismiss Counterclaims

Plaintiffs move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss defendants' counterclaims against plaintiff Cinar for breach of contract and breach of fiduciary duty.  This Court has supplemental jurisdiction over the counterclaims, as they arise out of a "common nucleus of operative fact" with plaintiffs' FLSA claims.  The breach-of-fiduciary-duty counterclaim, pleaded in defendants' answer to plaintiffs' amended class complaint, is not barred by the statute of limitations because it, at a minimum, relates back to the affirmative defenses first pleaded in defendants' original answer.  Finally, plaintiffs' motion to dismiss defendants' request for injunctive relief is denied because, taking the allegations in defendants' counterclaims as true,

defendants have pleaded the existence of a present injury capable of being remedied by an injunction.

### A.    Supplemental Jurisdiction

#### 1.    Legal Standard

Plaintiffs move to dismiss defendants' counterclaims against plaintiff Cinar for lack of subject-matter jurisdiction.  In pressing these claims, defendants invoke this Court's supplemental jurisdiction under 28 U.S.C. § 1367, which provides for jurisdiction over "all other claims that are so related to claims in the action . . . that they form part of the same case or controversy."  28 U.S.C. § 1367(a).

The scope of supplemental jurisdiction has traditionally been defined as claims that share a "common nucleus of operative fact" with the underlying claim.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (same).  At bottom, the supplemental jurisdiction inquiry rests on "whether 'the facts underlying the federal and state claims substantially overlap[] or the federal claim necessarily [brings] the facts underlying the state claim before the court.'"  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (brackets, ellipsis, quotation marks, and citation omitted).

"Whether a counterclaim is compulsory or permissive bears on the supplemental jurisdiction analysis."  *Turban v. Bar Giacosa Corp.*, No. 19-CV-1138, 2019 WL 3495947, at *3 (S.D.N.Y. Aug. 1, 2019).  For a counterclaim to be compulsory, its "essential facts" must be "so logically connected [with those of the main claims] that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  *Jones*, 358 F.3d at 209 (citation omitted).  Compulsory counterclaims necessarily fall within a court's supplemental jurisdiction because they are subject to a more stringent standard than the "common nucleus of operative fact"

test. *Turban*, 2019 WL 3495947, at *3. Counterclaims that do not qualify as compulsory are considered permissive and may fall within the court's supplemental jurisdiction if the "common nucleus of operative fact" test is met. *See Jones*, 358 F.3d at 213; *Turban*, 2019 WL 3495947, at *3; 28 U.S.C. § 1367(a). Once a court determines that supplemental jurisdiction exists over a permissive counterclaim, it must then consider whether the claim falls into one of the categories listed in 28 U.S.C. § 1367(c) and, if so, whether it should exercise its discretion to decline to hear the claim. *Jones*, 358 F.3d 214; *Shahriar*, 659 F.3d at 245.

## 2.   Analysis

This Court has supplemental jurisdiction over defendants' counterclaims against plaintiff Cinar.

To start, defendants' counterclaims are not compulsory. The counterclaims concern discrete allegations of misconduct pertaining to only one plaintiff—Cinar—while plaintiffs' claims turn on allegations regarding defendants' pay practices common to all R&G Brenner employees. That alone is enough to render these counterclaims non-compulsory. *See, e.g.*, *Turban*, 2019 WL 3495947, at *4 ("In addition, while Turban brings claims for class-wide wage and hour violations, Defendants' counterclaim pertains only to Turban's misconduct. That is enough to undermine any claim of a 'logical relationship' between the two."); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 467–68 (S.D.N.Y. 2008) (finding counterclaims in a FLSA case involving "chain-wide compensation practices" to be "clearly" permissive when they focused on "discrete allegations of misconduct . . . pertaining to only two Plaintiffs").

*Markbreiter v. Barry L. Feinberg, M.D., P.C.*, No. 09-CV-5573, 2010 WL 334887 (S.D.N.Y. 2010), cited by defendants, is not to the contrary. The FLSA suit there was brought by just a single employee—"[t]he focus of the entire case was on the single employer-employee relationship." *Id.* at *1. The court specifically distinguished its holding from *Torres* on this

ground.  *See ibid.*; *see also Barrera v. FF & A Rest. Corp.*, 19-CV-2747, 2021 WL 2142650, at *5 (E.D.N.Y. Mar. 29, 2021) (distinguishing *Markbreiter* on this basis), *report and recommendation adopted*, 2021 WL 2138875 (E.D.N.Y. May 25, 2021).

That being said, supplemental jurisdiction exists over this permissive counterclaim.  As plaintiffs correctly argue, courts generally do not find a defendant-employer's counterclaims to arise out of a "common nucleus of operative fact" as a plaintiff-employee's wage-and-hour claims if the only link between the two is the mere fact of the employment relationship.  *Torres*, 628 F. Supp. 2d at 468–69; *see also Yahui Zhang v. Akami Inc.*, No. 15-CV-4946, 2017 WL 4329723, at *10 (S.D.N.Y. Sept. 26, 2017) (collecting cases).

Here, however, there is more.  The conduct relevant to defendants' breach-of-contract and breach-of-fiduciary-duty counterclaims "substantially overlap[s]" with the conduct relevant to plaintiffs' wage-and-hour claims.  *Achtman*, 464 F.3d at 335.  In particular, defendants have raised as an affirmative defense to Cinar's FLSA claim that she was not entitled to compensation for any time during which she was allegedly acting as an unfaithful servant—working for her own clients as opposed to those of R&G Brenner.  Answer to Am. Compl. 36–37 ¶¶ 319, 321.  This is precisely the same conduct that underlies defendants' breach-of-contract and breach-of-fiduciary-duty counterclaims.  Adjudicating both sets of claims will require "an examination of how many hours [Cinar was] actually working and performed [her] assigned duties, as opposed to engaging in other personal endeavors."  *Barrera*, 2021 WL 2142650, at *7.  And the "same evidence—personnel files, time sheets, pay stubs, terms of employment, etc.—will apply in each case, and the same witnesses—plaintiff, h[er] supervisors, perhaps h[er] co-workers—will likely be deposed or called to testify in each case," strengthening the rationale for adjudicating these claims in the same proceeding.  *Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397, 401 (S.D.N.Y. 2010).  In short,

22

"[b]ecause presentation of the federal claim and determination of the . . . affirmative defense will 'necessarily bring the facts underlying the state counterclaim before the court,' the counterclaim forms part of the same case or controversy as the claims already before the Court and is thus within the Court's supplemental jurisdiction." *Stefanovic v. Old Heidelberg Corp.*, No. 18-CV-2093, 2019 WL 3745657, at *2 (S.D.N.Y. Aug. 8, 2019) (brackets omitted) (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)); *see Markbreiter*, 2010 WL 334887, at *1 ("[T]he counterclaim seeks to recover compensation defendants paid to plaintiff for hours during which she allegedly was acting on behalf of competing physicians to attract defendants' patients whereas plaintiff seeks, at a minimum, to count those same hours in determining her entitled to overtime compensation.  The 'logical relationship' between the complaint and the counterclaim is patent.").

In their reply brief, plaintiffs argue that the defendants' answer and counterclaims did not squarely present the theory that plaintiff Cinar was working for her own clients during time that she was on the clock for R&G Brenner.  Pls.' Reply in Supp. of Pls.' Mot. to Dismiss 1–3 (Dkt. #92).  This, however, is an unduly cramped reading of defendants' answer.  Defendants pleaded that, for several years while employed by R&G Brenner, plaintiff Cinar solicited and prepared tax returns from "Brenner Clients" for her own personal benefit.  Answer to Am. Compl. 45 ¶¶ 37–38.  The clients she allegedly solicited were defined by her employment contract as

> individual[s] or business[es] whose tax return was prepared by her, either in whole or in part, in a Brenner tax preparation office or on behalf of Brenner, or prepared at [her] direction, as well as a prospective client who enters into or contacts a Brenner tax preparation office for the purpose of receiving tax preparation services, . . . with whom she had contact with while she associated with Brenner.

*Id.* 41 ¶ 20 (brackets and emphasis omitted).  The counterclaims' allegations thus directly concern clients Cinar could only have encountered while on the job at R&G Brenner.  And in support of

their claims, defendants presented deposition testimony and documentary evidence showing that many of Cinar's private clients reside in New York—where R&G Brenner practices—even though Cinar herself resides in Pennsylvania.  *See* Cinar Dep. 22:23–23:8 (Dkt. #91-2); Cinar Client List (Dkt. #91-3); *see also* Benjamin Brenner Dep. 216:3–217:20 (Dkt. #92-2).  At this stage, consistent with the obligation to "draw all reasonable inferences in favor of the party asserting jurisdiction," defendants have adequately presented the theory that Cinar was engaged in disloyal, on-the-job conduct.  *Tandon*, 752 F.3d at 243.  Plaintiffs are of course welcome to attack defendants' breach-of-contract and breach-of-fiduciary-duty claims on the merits, but such challenges are properly reserved for a motion for summary judgment or for trial, not the initial jurisdictional inquiry.

Plaintiffs' reliance on other FLSA cases declining supplemental jurisdiction over counterclaims that involved less-related conduct is unavailing.  In *Torres v. Gristede's Operating Corp.*, the defendant's counterclaims that one employee had allegedly sexually harassed coworkers and another had committed fraud on a customer's credit card were not connected to the plaintiffs' wage-and-hour claims.  628 F. Supp. 2d at 466–67.  The defendant there never "allege[d], for instance, that it did not pay [plaintiffs'] premium overtime compensation because of their alleged misconduct."  *Id.* at 468.  Same with *Zhang v. Akami*, which concerned an allegation that an employee sent explicit and harassing messages.  2017 WL 4329723, at *10.  Likewise, the counterclaims in *Johnson v. Corporate Express, Inc.*, the three dismissed counterclaims in *Barrera v. FF & A Restaurant Group, Inc.*, and the counterclaims in *Cicek v. Green Station Auto Services, Inc.* all involved ordinary theft—misuse of a company credit card in *Johnson*, theft of food and alcohol in *Barrera*, and theft of customer money in *Cicek*.  *Johnson*, No. 20-CV-4627, 2022 WL 992633, at *2–3 (E.D.N.Y. Mar. 31, 2022); *Barrera*, 2021 WL 2142650, at *6–8; *Cicek*, No. 23-CV-5448, 2024 WL 2258312, at *4 (E.D.N.Y. May 17, 2024).  Claims about sexual harassment

and petty theft do not implicate the number of hours an employee works or how an employee's compensation was calculated.  Claims that an employee was soliciting her employee's clients and working for her own, competing business while on-the-clock, do.

Finally, the Court will not decline to exercise supplemental jurisdiction over defendants' counterclaims.  None of the categories enumerated in 28 U.S.C. § 1367(c) apply.  Defendants' counterclaims do not raise novel or complex issues of state law, they do not substantially predominate over plaintiffs' FLSA claims, the FLSA claims have not been dismissed, and there are no other compelling reasons to decline jurisdiction.  *See Shahriar*, 659 F.3d at 245; 28 U.S.C. § 1367(c).

### B.    Statute of Limitations

Next, plaintiffs move to dismiss defendants' breach-of-fiduciary-duty counterclaim, arguing that the statute of limitations has run.  Plaintiffs' arguments lack merit.

#### 1.    Legal Standard

 "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).

New York law does not provide a single statute of limitations for breach-of-fiduciary-duty claims.

> Rather, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks.  Where the remedy sought is purely monetary in nature, courts construe the suit as alleging "injury to property" within the meaning of CPLR 214(4), which has a three-year limitations period.  Where, however, the relief sought is equitable in nature, the six-year limitations period of CPLR 213(1) applies.  Moreover, where an allegation of fraud is essential to a breach of fiduciary duty claim, courts have applied a six-year statute of limitations under CPLR 213(8).

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009) (citations omitted).

Claims brought in an untimely pleading may still be considered timely if they relate back to an earlier, timely pleading.  Federal Rule of Civil Procedure 15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when[] the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  "The purpose of 'Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'"  *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (quoting *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir. 1983)).  "For a newly added action to relate back, the basic claim must have arisen out of the conduct set forth in the original pleading."  *Ibid.* (quoting *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 36 (2d Cir. 2002)).  "Under Rule 15, the 'central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.'"  *Ibid.* (citation omitted).  The same standard applies when determining whether a newly pleaded counterclaim relates back to allegations in a defendant's answer.  *Banco Para El Comercio Exterior De Cuba v. First Nat'l City Bank*, 744 F.2d 237, 243 (2d Cir. 1984); *see* Fed. R. Civ. P. 15, advisory committee's note to 2009 amendment ("Rule 15 [is] the sole rule governing amendment of a pleading to add a counterclaim.").

### 2.   Analysis

Defendants' counterclaims are timely.

Plaintiff Cinar's employment with R&G Brenner ended on or about October 31, 2019.  *See* Pls.' Mot. to Dismiss 14.  Defendants filed their answer to plaintiffs' amended complaint containing their counterclaims on November 27, 2023.  *See* Answer to Am. Compl.  Plaintiffs argue that defendants' breach-of-fiduciary-duty counterclaim was untimely because New York law imposes a three-year statute of limitations on such claims.  Pls.' Mot. to Dismiss 13–14.

Defendants dispute that the three-year statute of limitations applies, but also argue that even if it does apply, their counterclaim was timely under the relation-back doctrine.  Defs.' Mem. of L. in Opp. to Pls.' Mot. to Dismiss 13–15 (Dkt. #91).

Regardless of whether a three- or six-year statute of limitations applies, defendants' breach-of-fiduciary-duty counterclaim was timely.  Defendants' first answer was served on June 3, 2020, within any applicable limitations period.  *See* Answer.  There, defendants clearly asserted the basic theory underpinning their breach-of-contract and breach-of-fiduciary-duty claims: "Plaintiff [Cinar] while employed by Defendant, wrongfully competed and directed clients from Defendant to Plaintiff personal business.  Such action consisted of a breach of contract, breach of duty of loyalty and fiduciary duties to Defendant."  Answer ¶ 104.  Though styled as an affirmative defense rather than a standalone counterclaim, courts will not place "undue emphasis on the particular way in which notice is received."  6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1497 (3d ed. 2024).  Defendants' answer to plaintiffs' original complaint conveyed sufficient notice of defendants' allegations that plaintiff Cinar breached the noncompete provisions of her employment agreement and violated fiduciary duties to her employer—precisely the same "conduct, transaction, or occurrence" underlying their counterclaims.  And plaintiffs do not argue that defendants' breach-of-contract counterclaim is untimely.  There is therefore no risk of prejudice caused to plaintiffs by simply restyling those allegations as a standalone basis for recovery.

Plaintiffs do not seriously dispute that defendants' original answer alleged the same breach-of-fiduciary-duty theory as defendants' counterclaims, presented in their answer to plaintiffs' amended complaint.  Instead, they argue that the relation-back doctrine does not apply here because of two technicalities.  First, plaintiffs argue that defendants' original answer cannot have

preserved their counterclaims because the two defendant-counterclaimants, Summit Consultants and Apex Planning, were not yet parties to the lawsuit at the time of the original answer.  Pls.' Reply in Supp. of Pls.' Mot. to Dismiss 6–7.  This appears to be a simple case of mutual mistake. In its answer to plaintiffs' original complaint, defendant R&G Brenner Income Tax, LLC admitted that it was plaintiff Cinar's employer.  Compl. ¶ 6; Answer ¶ 6.  When discovery revealed that not to be the case, plaintiffs and defendants jointly stipulated that a partnership formed by Summit Consultants and Apex Planning was plaintiff Cinar's actual employer and that those entities would be added as defendants.  Joint Stipulation ¶ 4.

The relation-back doctrine has its strongest application when amendments "merely correct technical deficiencies."  Wright & Miller, *supra*, § 1497.  Although Rule 15(c) does not expressly address changes in plaintiffs (or counterclaimants), "the problem of relation back generally is easier to resolve in this context."  *Id.* § 1501.  "Relation back . . . will be permitted unless the court finds that defendant did not have adequate notice or that the new and the existing plaintiffs did not share a sufficient identity of interest."  *Ibid.*; *see Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) ("Although the district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party, there plainly should be no dismissal where substitution of the real party in interest is necessary to avoid injustice." (quotation marks and citations omitted)); *Staren v. Am. Nat'l Bank & Tr. Co. of Chi.*, 529 F.2d 1257, 1263 (7th Cir. 1976) ("The substitution of [plaintiffs] after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based."); *cf. In re Magnum Hunter Res. Corp.*, 26 F. Supp. 3d 278, 303 (S.D.N.Y. 2014) (rejecting application of the relation-back doctrine where amendment added new plaintiffs bringing brand-new causes of action that

original plaintiffs lacked standing to bring), *aff'd*, 616 F. App'x 442 (2d Cir. 2015).  Plaintiffs have not identified any prejudice that would result from the merely formal substitution of R&G Brenner Income Tax, LLC for Summit Consultants and Apex Planning when the substantive allegations remain exactly the same.

Second, plaintiffs argue that, as an answer to an amended complaint, defendants' answer that brought the counterclaims is not an "amended pleading" within the meaning of Rule 15, and thus cannot relate back to their answer to plaintiffs' original complaint.  Pls.' Reply in Supp. of Pls.' Mot. to Dismiss 7–8.  It is true that district courts in this Circuit have stated that, for purposes of Rule 15(a), "an answer to an amended complaint is not itself an amended pleading."  *E.g.*, *Deutsch v. Health Ins. Plan of Greater N.Y.*, 573 F. Supp. 1443, 1445 (S.D.N.Y. 1983).  But those cases address only the rule that a party is entitled to one amendment of a pleading by right under Rule 15(a)(1)—they do not purport to address the relation-back rule.  Plaintiffs have identified no authority holding that an answer to an amended complaint cannot relate back to an earlier-filed answer.  For good reason—such a rule would seem to yield bizarre consequences.  If the relation-back doctrine did not apply, a defendant's right to respond to new allegations in a plaintiff's amended complaint would be conditioned on its giving up any permissive counterclaims alleged in its original answer that have since become untimely.  It is unlikely that the drafters of the Federal Rules would have intended to permit plaintiffs to hold defendants hostage in this manner.  *See* Wright & Miller, *supra*, § 1476 (noting that "when the complaint is amended defendant should be entitled to amend the answer to meet the contents of the new complaint" and that "[o]nly the date on which the original pleading was filed continues to be relevant because it will control if the amended pleading relates back under Rule 15(c)").

This conclusion finds support in the Second Circuit's pronouncements on a related area—under what circumstances parties may seek to introduce counterclaims omitted from an earlier answer.  In *GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92 (2d Cir. 2019), the Second Circuit clarified the standards district courts should apply when evaluating new counterclaims, whether introduced via amendment or for the first time in response to an amended complaint.  The Second Circuit observed that defendants seeking to add omitted counterclaims would often require a court's leave to do so, by moving under Rule 15(a)(2) to amend an answer. *Id.* at 100.  But not always.  Defendants could introduce a counterclaim in an amendment by right under Rule 15(a)(1), or—most relevantly for our purposes—via a successive answer to a plaintiff's amended complaint.  *Id.* at 100–01.  In these latter circumstances, the Second Circuit held that district courts evaluating new counterclaims should "exercise the discretion the court would have been entitled to use if the counterclaimant had moved under Rule 15 to file the new counterclaim"—by evaluating the new counterclaim for prejudice to the plaintiff.  *Id.* at 101. *GEOMC Co.* suggests that counterclaims introduced via an updated answer to an amended complaint are functionally amendments to an earlier answer, and should be treated similarly.  They should therefore benefit from the relation-back doctrine, as would any amendment to an answer. Therefore, where a properly introduced counterclaim otherwise satisfies the requirements of Rule 15(c), the fact that it was introduced via an answer to an amended complaint and not via amendment to an answer will not defeat application of the relation-back doctrine.

C.     **Injunctive Relief**

Finally, plaintiffs move to dismiss defendants' request for injunctive relief on its breach-of-contract counterclaim, arguing that because more than two years have passed since the end of plaintiff Cinar's employment, the contractual noncompete provisions have now expired of their own accord.  Pls.' Mot. to Dismiss 14–16.  Accordingly, plaintiffs argue that defendants lack a

current or imminent future injury capable of sustaining injunctive relief. *Ibid.*; *see Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 271 (S.D.N.Y. 2014) ("Although a past wrong is relevant evidence as to whether there is a real and immediate threat of repeated injury, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." (brackets, ellipsis, quotation marks, and citation omitted)).

But even if plaintiff Cinar is no longer subject to contractual noncompete provisions, misappropriation of proprietary information like customer lists is a classic injury that courts routinely find constitutes irreparable harm to an employer capable of sustaining injunctive relief. *See Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 532–33 (S.D.N.Y. 2004) ("Irreparable harm to an employer may also result where an employee has misappropriated trade secrets or confidential customer information, including pricing methods, customer lists and customer preferences.") (collecting cases). Indeed, Cinar's employment agreement stated that she agreed misappropriation of R&G Brenner client information would constitute "immediate and irreparable injury" to R&G Brenner. Answer to Am. Compl. 40 ¶ 19; *see N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (crediting a similar contractual provision and affirming an injunction). At the pleading stage, accepting defendants' allegations as true, as the Court must, s*ee Warth v. Seldin*, 422 U.S. 490, 501 (1975), plaintiff Cinar's alleged exploitation of R&G Brenner's proprietary client lists in violation of her employment agreement causes defendants a current and ongoing injury capable of redress via an injunction.

**CONCLUSION**

Magistrate Judge Cho's R. & R. is adopted as modified by this Memorandum and Order. Plaintiffs' motion to certify a class under Federal Rule of Civil Procedure 23(b)(3) is granted, with the exception that the class period must have a defined end date. Within thirty days of this order, the parties shall submit a joint letter proposing a definite end date for the class period. Plaintiffs' request for authorization to distribute their proposed Rule 23(c)(2)(B) notice is denied, and the parties are directed to confer and submit a joint revised class notice for approval within forty-five days of this order. Plaintiffs' motion to dismiss defendants' counterclaims is denied.

SO ORDERED.

_/s/  Rachel Kovner_____
RACHEL P. KOVNER
United States District Judge

Dated:  September 18, 2024
        Brooklyn, New York